UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - X

ENTRAL GROUP INTERNATIONAL, LLC,

                    Plaintiff,

                                        REPORT &
          - against -                   RECOMMENDATION

HONEY CAFÉ ON 5TH INC., and ZHI GANG    CV 05-2290 (NGG)(MDG)
SHEN

                    Defendants.

- - - - - - - - - - - - - - - - - - - X

GO, United States Magistrate Judge:

     Plaintiff Entral Group International, LLC ("Entral") brought
this action against defendants Honey Café on 5th Inc. ("HCI") and
Zhi Gang Shen (collectively "defendants") alleging infringement
of its exclusive rights to Chinese language audio-visual karaoke
works.  By order dated January 19, 2006, the Honorable Nicholas
G. Garaufis granted plaintiff's motion for default judgment and
referred to me for report and recommendation the amount of
damages and attorney's fees to be awarded.  See ct. doc. 14.


                    FACTUAL BACKGROUND

     The pertinent facts are undisputed and are set forth in the
Complaint ("Compl.") (ct. doc. 1), the Declaration of Nicolas
Chai, the President of Entral, dated March 3, 2006 ("Chai Decl.")
(ct. doc. 21), the Declaration of Andy Wong dated March 3, 2006

("Wong Decl.") (ct. doc. 22) and the Declaration of Robert E. Hanlon dated March 6, 2006 ("Hanlon Decl.") (ct. doc. 20).

Entral licenses and distributes Chinese language audio-visual karaoke works for commercial use in the United States. Compl. at ¶ 6; Chai Decl. at ¶ 4. It is the exclusive licensee in North America of karaoke audio-visual works (the "Works") created in Hong Kong by Universal Music Limited, EMI Group Hong Kong Limited, Emperor Entertainment (Hong Kong) Limited, Go East Entertainment Company Limited, Cinepoly Record Co., and Warner Music Hong Kong Ltd. (collectively "the Companies"). Chai Decl. at ¶ 7; Compl. at ¶¶ 8, 14, Exh. 1 (affidavits by officers of each of the Companies confirming licensing rights). The Companies, either directly or through their subsidiaries, own and have exclusive legal control of all worldwide copyright interests in their respective karaoke audio-visual works. Chai Decl. at ¶ 5; Compl. at ¶ 8, Exh. 1.

Pursuant to agreements between the Companies and TC Worldwide Ltd. ("TCW"), an affiliate of Entral, the Companies granted TCW the exclusive rights to reproduce, distribute, and commercially use the Works, including the right to authorize third parties to license the Works and collect fees for their use in commercial karaoke outlets in the United States. Compl. at ¶¶ 12-13, Exh. 1; Chai Decl. at ¶ 6. In turn, TCW, with the approval of the Companies, has exclusively licensed all of its copyright interests in the Works to Entral for use in the United

States.  Compl. at ¶ 13, Exh. 1; Chai Decl. at ¶ 6.  Entral,
which has invested substantial sums of money and effort in
promoting and marketing Chinese language audio-visual works in
the United States, is widely known throughout the United States
and the world as a purveyor of high quality foreign language
audio-visual karaoke works in North America.  Compl. at ¶¶ 6-7.

The Works contain performances of artists who are generally
under exclusive contracts with the Companies for karaoke audio-
visual works.  Compl. at ¶ 11.  The Works consist of a constantly
expanding list of works reflected in "catalogs" that are
regularly updated.  Id. at ¶ 15, 16, Exh. 1 (catalogs).  Older
works are contained in "Backlists" or "Back Catalogs," while more
recent works are listed in "Control Catalogs."  Id. at ¶ 7, Exh.
1.  Besides the Works listed in the last updated Control Catalog,
the Companies have also authorized Entral to use several hundred
additional audio-visual Works not contained in that catalog.
Chai Decl. at ¶ 8.  Entral has registered some of the Works with
the Registrar of Copyrights in the United States Copyright
Office.  Compl. at ¶ 17, Exh. 2 (copyright certificates); Chai
Decl. at ¶ 9.

Defendant HCI operates the Honey Café, a commercial
establishment located at 135-20 39th Avenue in Flushing, New
York.  Compl. at ¶ 19; Chai Decl. at ¶ 10.  The Honey Café
consists of a bar with a lounge area and individual rooms where
patrons may access and perform karaoke works.  Wong Decl. at ¶ 5.

In the lounge area, there is a television monitor that displays
karaoke works, a binder listing the karaoke works available for
selection on each table, a computer monitor displaying the menu
for selection of karaoke works and the main CPU for the computer.
Id. at ¶ 5.  One or more other computer units at Honey Café are
used to copy karaoke works onto a networked computer system, to
store those karaoke works and to distribute those karaoke works
to the lounge computer.  Id. at ¶ 11.

In April 2005, Andy Wong, an investigator hired by
plaintiff, visited Honey Café and observed that a significant
portion of the Works were available to customers to use on Honey
Cafe's equipment.  Wong Decl. at ¶ 7.  In fact, there were
"hundreds, if not thousands" of the Works offered at Honey Café,
which constituted "a substantial portion, if not a majority" of
all the karaoke materials offered.  Chai Decl. at ¶ 13; Wong
Decl. at ¶ 7.  Defendants had no license to copy or use the Works
at that time.  Compl. at ¶ 20.

On May 11, 2005, plaintiff commenced this action alleging
copyright infringement and seeking injunctive relief and damages.
See ct. doc. 1.  On June 1, 2005, plaintiff served both
defendants at the Honey Café by leaving process with Jimmy Yu,
described as a manager of the café.  See Affidavits of Service
(ct. docs. 4, 5).  The café is alleged to be the actual place of
business of Shen, who is the chairman or chief executive officer
of HCI.  See Compl. at ¶ 3; N.Y. C.P.L.R. § 308; Fed. R. Civ. P.

-4-

4(e)(1). The Certificate of Incorporation for HCI on file with the Secretary of State for New York indicates that the location of the café is the address for service and lists Shen as chairman or chief executive officer.[1]

In October 2005, Nicolas Chai, plaintiff's President, visited Honey Café and observed that defendants were still offering the Works for their customers' use. Chai Decl. at ¶¶ 14-15. He observed at least two of the Works that Entral has registered with the U.S. Copyright Office being offered for performance. Chai Decl. at ¶ 16.

In November 2005, Chai sent defendant's a cease and desist letter to which there was no response. Id. at ¶ 17.

Following defendants' failure to answer plaintiff's complaint, plaintiff filed a motion for judgment by default on or about October 11, 2005. See ct. doc. 7.

## DISCUSSION

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Reality

---

[1] The Court can take judicial notice of this public filing by HCI. See Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991) (taking judicial notice of contents of corporate filings with SEC); Banks v. Consumer Home Mortgage, No. 01-CV-8058, 2003 WL 21251584, at *6 n.7 (E.D.N.Y. Mar. 28, 2003) (taking judicial notice of public record on file with Secretary of State for Georgia); McMichael v. U.S. Filter Corp., No. 99-182, 2001 WL 418981, at *8 (E.D. Ca. Feb. 23, 2001) (taking judicial notice of certificate of incorporation in Delaware).

Corp., 973 F.2d 155, 158 (2d Cir.), cert. denied., 113 S. Ct.
1049 (1993); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65
(2d Cir. 1981). A default also effectively constitutes an
admission that damages were proximately caused by the defaulting
party's conduct: that is, the acts pleaded in a complaint
violated the laws upon which a claim is based and caused injuries
as alleged. Id. at 69-70. The movant need prove "only that the
compensation sought relate to the damages that naturally flow
from the injuries pleaded." Greyhound, 973 F.2d at 159.

The court must ensure that there is a reasonable basis for
the damages specified in a default judgment. Actual damages or
statutory damages may be assessed. In determining damages not
susceptible to simple mathematical calculation, Fed. R. Civ. P.
55(b)(2) gives a court the discretion to determine whether an
evidentiary hearing is necessary or whether to rely on detailed
affidavits or documentary evidence. Action S.A. v. Marc Rich and
Co., Inc., 951 F.2d 504, 508 (2d Cir.), cert. denied, 503 U.S.
1006 (1992) (quoting Fustok v. Conticommodity Serv, Inc., 873
F.2d 38, 40 (2d Cir. 1989)). The moving party is entitled to all
reasonable inferences from the evidence it offers. Au Bon Pain,
653 F.2d at 65 (citing Trans World Airlines, Inc. v. Hughes, 308
F. Supp. 679, 683 (S.D.N.Y. 1969)).

<u>Liability of Defendants</u>

In order to prevail on a claim of copyright infringement, a plaintiff must demonstrate that it owns a valid copyright and that the defendant engaged in unauthorized copying of the constituent original elements of plaintiff's work. <u>Feist Publications, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 361 (1991); <u>Laureyssens v. Idea Group, Inc.</u>, 964 F.2d 131, 139 (2d Cir. 1992). Although proof of registration is ordinarily required before a copyright infringement suit may be brought in federal court, such registration is not necessary if the work, as here, originated in a country outside the United States that is a signatory to the Berne Convention for the Protection of Literary and Artistic Works ("Berne Convention"). <u>See La Resolana Architects, PA v. Clay Realtors Angel Fire</u>, 416 F.3d 1195, 1201 n.5, 1205-06 (10th Cir. 2005); <u>Jose Armando Bermudez Co. v. Bermudez Int'l</u>, No. 99 Civ. 9346, 2000 WL 1225792, at *10 (S.D.N.Y. Aug, 29, 2000); 17 U.S.C. §§ 101, 411(a).

Exclusive licensees are treated as copyright owners of the rights licensed and may sue for copyright infringement pursuant to 17 U.S.C. § 201(d)(2) which provides that "[t]he owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title." <u>Morris v. Business Concepts, Inc.</u>, 259 F.3d 65, 69 (2d Cir. 2003); <u>Random House, Inc. v.</u>

_Rosetta Books LLC_, 283 F.3d 490, 491 (2d Cir. 2002); 17 U.S.C. §
201(d)(2), 501(b).  Thus, plaintiff's ownership rights must
derive from the rights of its foreign licensors.  Pursuant to the
Berne Convention, a foreign national "may seek copyright
protection under the Copyright Act although the source of its
rights lies abroad."  _Bridgeman Art Library, Ltd. v. Corel Corp._,
25 F. Supp. 2d 421, 425 (S.D.N.Y. 1998); _see_ _Itar-Tass Russian
News Agency v. Russian Kurier, Inc._, 153 F.3d 82 (2d Cir. 1998)
(Russian news service sued defendant for infringement); 17 U.S.C.
§ 104(b)(2) (extending protection of sections 102 and 103 of the
Copyright Act to works first published in foreign countries which
are members of the Berne Convention).  Both Hong Kong and the
People's Republic of China are signatories to the Berne
Convention.  _See_ United States Copyright Office, Circular 38a,
International Copyright Relations of the United States (Mar. 1,
2003), _available_ _at_ http://www.copyright.gov/circs/circ38a.pdf.

    Where the works infringed are foreign works, the issue of
ownership of the copyright is determined according to the law of
the country which has the closest relationship to the works while
the issue of copyright infringement will be determined according
to the law of the country of infringement.  _See_ _Itar-Tass_, 153
F.3d at 89 (applying Russian law to issue of copyright ownership
and U.S. law to infringement issues); _Silberman v. Innovation
Luggage, Inc._, No. 01 Civ. 7109, 2003 WL 1787123, at *12
(S.D.N.Y. April 3, 2003) (applying Swiss law to issue of

copyright ownership where works were manufactured in Switzerland by a Swiss company).  In determining the applicable law on ownership issues, relevant factors include the nationality of the authors, the place of initial publication and the country of origin.  <u>Itar-Tass</u>, 153 F.3d at 90; <u>Silberman</u>, 2003 WL 1787123, at *12.

Chinese law applies to the issue of ownership since plaintiff alleges that the Works were created in Hong Kong, presumably by Chinese authors and first published in Hong Kong. <u>See</u> Compl. at ¶ 9, Exh. 2 (certificates of registration listing Hong Kong as author's domicile and nation of first publication of Work).  It is sufficient that the Complaint alleges that the Works are protected under Chinese law.  <u>See</u> Compl. at ¶ 9; <u>cf.</u> <u>Master Sound Int'l, Inc. v. Polygram Latino U.S.</u>, No. 98 Civ. 8468, 1999 WL 595661, at *2 (S.D.N.Y. Aug. 6, 1999) (on motion to dismiss, sufficient that complaint alleges that compositions are protected under Mexican law).  Moreover, for those Works that are registered with the U.S. Copyright Office, the certificate of registration constitutes <u>prima</u> <u>facie</u> evidence of the validity of the copyright.  <u>See</u> <u>Medforms, Inc. v. Healthcare Mgmt. Solutions,</u> <u>Inc.</u>, 290 F.3d 98, 114 (2d Cir. 2002) (copyright registration triggers rebuttable presumption of validity); <u>Edmark Indus. SDN.</u> <u>BHD. v. South Asian Int'l</u>, 89 F. Supp. 2d 840, 843 & n.1 (E.D. Tex. 2000) (registration of foreign works with Patent Office

creates a rebuttable presumption of validity under United States law); 17 U.S.C. § 410(c).

Plaintiff has presented affidavits from officers of all the Companies, confirming that the Companies, which are all located in Hong Kong, own the worldwide rights to the Works and have licensed the American rights to plaintiff. Compl., Exh. 1. Although plaintiff has not addressed the choice of law issue, this Court finds that plaintiff has offered undisputed and adequate proof that it owns exclusive U.S. distribution and licensing rights to the Works and has registered 14 of the Works with the U.S. Copyright Office. Compl., Exhs. 1, 2. Therefore, plaintiff is entitled to protection under the Copyright Act and pursuant to the Berne Convention.

Because the alleged infringement occurred in the United States, "United States law determines whether those copyrights have been infringed in the United States and, if so, what remedies are available." Itar-Tass, 153 F.3d at 84. Plaintiff has presented substantial proof of infringement of the Works by defendants.

Plaintiff's submissions establish that the Works exclusively licensed to Entral have been copied and displayed at Honey Café without Entral's permission. Nicolas Chai and Andy Wong visited the Honey Café before and after commencement of this action and were able to access audio-visual karaoke pieces, including the Works, on equipment used in the lounge area.

However, the liability of defendant Shen involves different
and additional considerations from the liability of the corporate
owner of the establishment.  On a claim for copyright
infringement, "directors and officers may not be held liable
based solely on a theory of control of the corporate entity."
Shady Records, Inc. v. Source Enters., Inc., No. 03 CIV. 9944,
2005 WL 14920, at *23 (S.D.N.Y. Jan. 3, 2005).  Rather, "any
individual, including a corporate officer, who has the ability to
supervise infringing activity and has a financial interest in
that activity, or who personally participates in that activity,
is personally liable for that infringement."  Id. (emphasis
added); see Sofitel Inc. v. Dragon Med. & Sci. Comm., 118 F.3d
955, 971 (2d Cir. 1997) (affirming dismissal of claims against
individual defendant based solely on status as president and
shareholder); Sygma Photo News, Inc. v. High Soc. Magazine, Inc.,
778 F.2d 89, 92 (2d Cir. 1985); Gershwin Publ'g Corp. v. Columbia
Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971).
Plaintiff simply alleges that Shen is the "principal chairman or
chief executive officer" of HCI, Chai Aff. at ¶ 11, but provides
no information regarding defendant Shen's conduct.  However,
since defendant Shen is listed as the "principal" of HCI in
licensing records of the New York State Liquor Authority, I find
such information sufficient to demonstrate, in the default
context, Mr. Shen's involvement and financial interest in the
Honey Cafe.  Thus, I recommend that default be entered against

both the corporate and individual defendant.

Determination of Damages

Section 504(c) of the Copyright Act (the "Act") provides that "[a] copyright owner may elect . . . to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action."  17 U.S.C. § 504(c)(1); see N.A.S. Import Corp. v. Chenson Enters., Inc., 968 F.2d 250, 252 (2d Cir. 1992); Arista Records, Inc. v. MP3Board, Inc., No. 00 CIV. 4660, 2002 WL 1997918, at *13 (S.D.N.Y. Aug. 29, 2002) (copyright owner may elect to recover statutory damages "simply upon a showing of infringement").  If statutory damages are elected, the Court has the discretion to award any just remedy in an amount ranging from not less than $750 to not more than $30,000 for each copyrighted work found to be infringed.  17 U.S.C. § 504(c)(1).  Entral has elected to recover statutory, rather than actual, damages against HCI.  Although plaintiff has presented information in the Chai Affidavit regarding lost license fees and estimated gross profits realized by defendants, see Chai Aff. at ¶¶ 26-28, statutory damages are particularly appropriate in this case because of the difficulty in determining with any degree of accuracy the extent of defendant's infringement.  See Van Der Zee v. Greenidge, No. 03 CV 8659, 2006 WL 44020, at *1 (S.D.N.Y. Jan. 6, 2006); Granada Sales Corp. v. Aumer, No. 02 CV 6682, 2003 WL 21383821, at *2 (S.D.N.Y. June 2,

-12-

2003); <u>Video Aided Instruction, Inc. v. Y & S Express, Inc.</u>, No.
96 CV 518 (CBA), 1996 WL 711513, at *4 (E.D.N.Y. Oct. 29, 1996);
<u>Latin Am. Music Co. v. Spanish Broadcasting Sys.</u>, 866 F. Supp.
780, 782-83 (S.D.N.Y. 1994).

In assessing statutory damages, the court may take into
account the "'expenses saved and profits reaped by the defendant
in connection with the infringements, the revenues lost by the
plaintiffs as a result of the defendant's conduct, and the
infringers' state of mind-whether willful, knowing, or merely
innocent.'" <u>N.A.S. Import</u>, 968 F.2d at 252 (quoting <u>Boz Scaggs</u>
<u>Music v. KND Corporation</u>, 491 F. Supp. 908, 914 (D. Conn. 1980));
<u>see also</u> <u>U2 Home Ent'mt, Inc. v. Lai Ying Music & Video Trading,</u>
<u>Inc.</u>, No. 04 Civ. 1233, 2005 WL 1231645, at *6 (S.D.N.Y. May 25,
2005); <u>Basic Books, Inc. v. Kinko's Graphics Corp.</u>, 758 F. Supp.
1522, 1544 (S.D.N.Y. 1991). Statutory damages under section
504(c) are designed not only to compensate for injury but also to
deter wrongful conduct. <u>See</u> <u>Yurman Design, Inc. v. PAJ, Inc.</u>,
262 F.3d 101, 113-14 (2d Cir. 2001).

If the infringement is found to be willful, the court may,
in its discretion, increase the award up to a maximum of $150,000
per infringement. <u>See</u> 17 U.S.C. § 504(c)(2). Willfulness is
determined by an inquiry into whether the defendant had knowledge
that its conduct represented infringement or had recklessly
disregarded the possibility of infringement. <u>See</u> <u>Lipton v.</u>
<u>Nature Co.</u>, 71 F.3d 464, 472 (2d Cir. 1995); <u>Twin Peaks Prods.,</u>

-13-

Inc. v. Publications Int'l, Ltd., 996 F.2d 1366, 1382 (2d Cir. 1993). Since knowledge of infringement may be "actual" or "constructive," it need not be proven directly and can be inferred from the defendant's conduct. See Knitwaves, Inc. v. Lollytogs, Ltd., 71 F.3d 996, 1010 (2d Cir. 1995); N.A.S. Import, 968 F.2d at 252. A defendant's default may also be considered as evidence of willful infringement. See Kenneth J. Lane, Inc. v. Heavenly Apparel, Inc., No. 03 CV 2132, 2006 WL 728407, at *6 (S.D.N.Y. March 21, 2006); Peer Int'l Corp. v. Max Music & Ent'mt, No. 03 Civ. 0996, 2004 WL 1542253, at *3 (S.D.N.Y. July 9, 2004); Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).

Plaintiff requests the maximum statutory damages of $150,000 for each of defendant's willful infringement of 14 of the Works that are registered with the U.S. Copyright Office. See Pl.'s Mem. in Support (ct. doc. 19) at 18; Compl., Exh. 2. Plaintiff has adequately demonstrated that HCI acted willfully in its infringement of a large number of the Works. In April 2005, plaintiff's investigator observed "at least hundreds, if not thousands" of the Works being offered to the public at Honey Café. Wong Decl. at ¶ 7. Plaintiff's investigator also noted that the "vast majority of the artists and Works listed are artists who have exclusive contracts with the Companies, and whose Works are exclusively licensed to [plaintiff]." Id. at ¶ 8. After plaintiff filed this action, Nicolas Chai observed that

-14-

defendant was still offering to the public Works exclusively licensed to plaintiff without its authorization, including two of the Works registered with the U.S. Copyright Office. Chai Decl. at ¶¶ 15-16. Although plaintiff specifically identifies only two of the Works registered with the U.S. Copyright Office that were offered by defendant, plaintiff's submissions are sufficient to support the inference that defendant willfully infringed its rights to 14 of the Works registered in the United States. See Wong Decl. at ¶¶ 7-8. Further, as discussed earlier, plaintiff is entitled to assert a claim for copyright infringement for other Works protected under the Berne Convention and not just the 14 Works for which plaintiff has submitted U.S. copyright registrations. See supra at p. 7. Indeed, defendant's failure to participate in this action, which may also be viewed as evidence of willfulness, see Kenneth J. Lane, 2006 WL 728407, at *6; Peer Int'l, 2004 WL 1542253, at *3; Tiffany, 282 F. Supp. 2d at 124, makes it impossible to determine the true extent of its infringing activities. I therefore recommend that the Court award plaintiff $2,100,000 in damages for defendant HCI's willful infringement of 14 of plaintiff's Works ($150,000 x 14).[2]

---

[2] I note that other courts in this district have recently awarded this plaintiff $150,000 per infringed title. See Entral Group Int'l, LLC v. Fortuna Lounge Rest. Corp., 05-CV-1914, ct. doc. 8 (E.D.N.Y. Nov. 30, 2005) (Garaufis, J.) (awarding plaintiff $2.1 million in damages); Entral Group Int'l, LLC v. KB28, Inc., 05-CV-1652, ct. doc. 10 (E.D.N.Y. Nov. 10, 2005) (Glasser, J.) (same).

<u>Injunctive Relief</u>

Plaintiff seeks a permanent injunction prohibiting defendants from copying, distributing or performing any of the Works exclusively licensed to Entral. "A court may 'issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction.'" <u>Dunkin' Donuts Inc. v. Peter Romanofsky, Inc.</u>, No. CV-05-3200, 2006 WL 2433127, at *6 (E.D.N.Y. Aug. 8, 2006) (quoting <u>King v. Nelco Indus., Inc.</u>, No. 96-CV-4177, 1996 WL 629564, *1 (E.D.N.Y. Oct. 23, 1996)). Under section 502(a) of the Act, a court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). To obtain a permanent injunction, plaintiff must establish that 1) absent injunctive relief, it will suffer irreparable harm, and 2) actual success on the merits. <u>See</u> <u>Amoco Prod. Co. v. Village of Gambell</u>, 480 U.S. 531, 546 (1987); <u>N. Atl. Instruments, Inc. v. Haber</u>, 188 F.3d 38, 43 (2d Cir. 1999). Generally, the movant must show the threat of a continuing violation in order to obtain injunctive relief. <u>See</u> <u>Barrera v. Brooklyn Music, Ltd.</u>, 346 F. Supp. 2d 400, 412-13 (S.D.N.Y. 2004); <u>Boisson v. Banian Ltd.</u>, 280 F. Supp. 2d 10, 15 (E.D.N.Y. 2003).

As discussed, plaintiff has demonstrated HCI's liability, and thus, actual success on the merits. Where, as here,

plaintiff has established a <u>prima</u> <u>facie</u> case of copyright infringement, irreparable harm is presumed. <u>See</u> <u>Merkos L'inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch</u>, 312 F.3d 94, 96 (2d Cir. 2002); <u>ABKCO Music, Inc. v. Stellar Records, Inc.</u>, 96 F.3d 60, 64 (2d Cir. 1996); <u>U2 Home Ent'mt, Inc. v. Bowery Music City, Inc.</u>, No. 03 Civ. 8909, 2003 WL 22889738, at *1 (S.D.N.Y. Dec. 8, 2003). Moreover, it is likely that in the absence of an injunction defendants will continue to infringe plaintiff's copyright interests, particularly in light of their failure to respond to plaintiff's cease and desist letter or plaintiff's Complaint. Even after this action was filed and the defendants served, Nicolas Chai observed that Honey Café was still offering to the public the Works exclusively licensed to plaintiff without authorization. Chai Decl. at ¶¶ 15-16. Since plaintiff has met the requisite showing to justify issuance of a permanent injunction, I recommend that plaintiff's request for injunctive relief against HCI be granted.

<u>Request for Impoundment and Forfeiture</u>

Plaintiff requests an order of impoundment and forfeiture pursuant to section 503 of the Act. Section 503(a) authorizes a court in which an action for copyright infringement is pending[3]

---

[3] Although section 503(a), which is primarily a measure for interim relief in a "pending" action, arguably may not apply in the default judgment context, in any event, section 503(b) authorizes both impoundment and forfeiture. <u>See</u> <u>Richard Fiener & Co. v. Turner Ent'mt</u>, No. 96 Civ. 1472, 1998 WL 78180, at *2 n.3
(continued...)

to order the seizure and impoundment of "all copies . . . claimed
to have been made or used in violation of the copyright owner's
exclusive rights" and of all devices by means of which such
copies may be reproduced. 17 U.S.C. § 503(a); see Sony Corp. of
America v. Universal City Studios, 464 U.S. 417, 433-434 (1984).
Section 503(b) provides for forfeiture "[a]s part of a final
judgment" including, "the destruction or other reasonable
disposition of all copies . . . found to have been made or used
in violation of the copyright owner's exclusive rights" as well
as the means by which such copies may be reproduced. 17 U.S.C.
§ 503(b); see Sony, 464 U.S. at 433-34; 4 Melville B. Nimmer &
David Nimmer, Nimmer on Copyright § 14.08 (2005) (discussing
remedy of forfeiture under section 503(b)).

The standard for determining whether a request for
impoundment should be granted is the same as the standard for
injunctive relief. See U2 Home Ent'mt, 2003 WL 22889738, at *1
(impoundment should be granted if plaintiff establishes a prima
facie case of copyright infringement); Columbia Pictures Indus.,
Inc. v. Jasso, 927 F. Supp. 1075, 1076 (N.D. Ill. 1996);
Paramount Pictures Corp. v. Doe, 821 F. Supp. 82, 88-89 (E.D.N.Y.

---

[3](...continued)
(S.D.N.Y. 1998). Since the word "impound" means to "take or
retain in 'the custody of the law,'" see Warner Bros. Inc. v. Dae
Rim Trading, Inc., 877 F.2d 1120, 1123 (2d Cir. 1989), the
"impoundment" here will be momentary in that the items seized by
the U.S. Marshal will be turned over immediately to plaintiff to
effectuate forfeiture under section 503(b).

1993).[4]  Those same rules of injunctive relief also apply to a

request for forfeiture.  See Barrera, 346 F. Supp. 2d at 406,

413; Antenna Television v. Aegean Video, Inc., No. 95-CV-2328,

1996 WL 298252, at *13 (E.D.N.Y. Apr. 23, 1996); Peer Int'l.

Corp. v. Luna Records, Inc., 887 F. Supp. 560, 570 (S.D.N.Y.

1995).  Although forfeiture is discretionary relief, forfeiture

is particularly appropriate where a court seeks to prevent future

infringements.  See Rogers v. Koons, 960 F.2d 301, 313 (2d Cir.

1992); Barrera, 346 F. Supp. 2d at 406, 413; Antenna, 1996 WL

298252, at *13; Peer Int'l, 887 F. Supp. at 570; Basquiat v.

Baghoomian, No. 90-CV-3853, 1992 WL 125529, at *3 (S.D.N.Y.

1992).  Further, the entitlement of impoundment and forfeiture

extends to any equipment which may be used for infringing

purposes.  See Nova Prods., Inc. v. Kisma Video, Inc., No. 02

Civ. 3850, 2004 WL 97692, at *2 (S.D.N.Y. Jan. 20, 2004);

Universal City Studios, Inc. v. Ahmed, No. CIV. A. 93-3266, 1994

WL 185622, at *5 (E.D. Pa. May 13, 1994); Basquiat, 1992 WL

125529, at *3; RSO Records, Inc. v. Peri, 596 F. Supp. 849, 863

(S.D.N.Y. 1984); 17 U.S.C. § 503(a), (b).

     Since this Court has already recommended issuance of a

permanent injunction to enjoin defendants' continuing

infringement of plaintiff's protected works, this Court further

_____

     [4] The latter two cases also referred to the procedures for
seizure and impoundment set forth in the Rules of Practice and
Procedure for Copyright cases, which were abrogated in 2001.  See
H.R. Doc. No. 107-61 (2001).

recommends, for the same reasons, that an order of impoundment,
seizure and forfeiture be issued forthwith.  Such an order should
cover not only infringing copies, but also the equipment which
facilitates the infringement as set forth in the form of the
Proposed Substitute Default Judgment and Permanent Injunction
(ct. doc. 18) filed by plaintiff.  Plaintiff has established that
specialized equipment at the Honey Café, including one or more
computer systems, enable patrons to select and display audio-
visual karaoke materials, including the Works.  Wong Decl. at ¶
5.  It is likely that at least one other room at Honey Café
contains one or more computers that are used to copy karaoke
works onto a networked computer system ("copying computer"),
store those karaoke works ("storage computer"), and distribute
those karaoke works to the lounge area and private rooms
("distribution computer").  <u>Id.</u> at ¶ 6.  These functions may be
carried out by one machine or several machines.  <u>Id.</u>  The most
common configuration consists of a single copying computer which
is connected to a combined storage and distribution computer.
<u>Id.</u>  Thus, impoundment and forfeiture should include the copying
computer, the storage computer and the distribution computer.
Although the equipment to be seized may also be used for non-
infringing karaoke works, "even if equipment may be used for a
legitimate purpose, it is not protected from seizure if it is
alleged to have been employed for illegal purposes."  <u>Nova</u>
<u>Prods</u>., 2004 WL 97692, at * 2; <u>Century Home Entm't, Inc. v. Laser</u>

-20-

<u>Beat, Inc.</u>, 859 F. Supp. 636, 639 (E.D.N.Y. 1994).

If plaintiff sells any of the forfeited equipment should it be commercially reasonable to do so, the proceeds of such sale, minus the costs of sale, should be applied pro rata against the damages assessed against defendants. <u>See</u> <u>RSO Records</u>, 596 F. Supp. at 864.

## <u>Attorney's Fees and Costs</u>

Plaintiff also seeks $19,566.05 in attorney's fees and $520 in costs. <u>See</u> Pl.'s Mem. in Support at 21; Hanlon Decl. at ¶¶ 6-8; Bill of Costs (attached to Hanlon Decl. as Exh. C).

Section 505 of the Act allows the prevailing party to recover full costs and reasonable attorney's fees at the court's discretion. <u>See</u> <u>Twin Peaks Prods.</u>, 996 F.2d at 1383; 17 U.S.C. § 505. A finding that a defendant's copyright infringement was willful can support an attorney's fees award. <u>See</u> <u>Kepner-Tregoe, Inc. v. Vroom</u>, 186 F.3d 283, 289 (2d Cir. 1999). Given the defendant's willful infringement and failure to participate in this action, an award of attorney's fees and costs is appropriate.

In determining reasonable attorney's fees, courts use the lodestar method by examining "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983); <u>Chambless v. Masters, Mates & Pilots Pension Plan</u>, 885 F.2d 1053, 1058-59

(2d Cir. 1989), <u>cert.</u> <u>denied</u>, 496 U.S. 905 (1990); <u>see</u> <u>also</u>
<u>Crescent Publ'g Group, Inc. v. Playboy Enters.</u>, 246 F.3d 142, 150
(2d Cir. 2001) (applying lodestar method in copyright
infringement case).  Reasonable hourly rates are determined by
examining the rates "'prevailing in the community for similar
services of lawyers of reasonably comparable skill, experience,
and reputation.'"  <u>Cruz v. Local Union No. 3</u>, 34 F.3d 1148, 1159
(2d Cir. 1994) (quoting <u>Blum v. Stevenson</u>, 465 U.S. 886, 896 n.11
(1984)).  The relevant community is the district in which the
court sits.  <u>Luciano v. Olsten Corp.</u>, 109 F.3d 111, 115 (2d Cir.
1997).

In reviewing a fee application, the district court must
examine the particular hours expended by counsel with a view to
the value of the work product of the specific expenditures to the
client's case.  <u>See</u> <u>Lunday v. City of Albany</u>, 42 F.3d 131, 133
(2d Cir. 1994); <u>DiFilippo v. Morizio</u>, 759 F.2d 231, 235 (2d Cir.
1985).  If any expenditure of time was unreasonable, the court
should exclude these hours from the lodestar calculation.  <u>See</u>
<u>Hensley</u>, 461 U.S. at 434; <u>Lunday</u>, 42 F.3d at 133.  The court
should thus exclude "excessive, redundant or otherwise
unnecessary hours, as well as hours dedicated to severable
unsuccessful claims."  <u>Quaratino v. Tiffany & Co.</u>, 166 F.3d 422,
425 (2d Cir. 1999).  A party seeking attorney's fees bears the
burden of supporting its claim of hours expended by accurate,
detailed and contemporaneous time records.  <u>New York State Ass'n</u>

for Retarded Children v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983). Fee applications without contemporaneous time records "should normally be disallowed." Id. at 1154.

First, plaintiff requests $10,250 in attorney's fees for work done by Coudert Brothers LLP ("Coudert"), which is no longer in operation. Hanlon Decl. at ¶¶ 4, 6. Although plaintiff has not produced contemporaneous time records or invoices reflecting the services provided, Nicolas Chai's Declaration states that pursuant to an agreement with Coudert, plaintiff was charged a fixed fee of $8,500 for the preparation of complaints "of this type." Chai Decl. at ¶ 42. In addition, plaintiff asserts that Coudert charged it an additional $1,750 for approximately 5 hours of work in moving for entry of default and supporting papers at $350 per hour. See id. at ¶ 43. Because plaintiff has not submitted the agreement with Coudert, any invoices, cancelled checks, billing records or proof of payments, this Court has no basis to determine the reasonableness of the request. However, I recommend that a modest fee be awarded, since prior counsel clearly did draft the Complaint and move for default. Moreover, defendants are not entitled to a windfall due to the dissolution of Coudert. Given the similarity of the Complaint herein to other complaints filed in other actions brought by plaintiff,[5] I

_____

[5] See, e.g., Entral Group Int'l, LLC v. Sun Sports Bar, 05-CV-4836, ct. doc. 1 (E.D.N.Y.); Entral Group Int'l, LLC v. Fortuna Lounge Rest. Corp., 05-CV-1914, ct. doc. 1 (E.D.N.Y.); Entral Group Int'l, LLC v. 7 Day Café & Bar Inc., 05-CV-1911, ct.
(continued...)

recommend that this Court award fees of $1,500 for the work
performed by prior counsel.

Plaintiff also seeks attorney's fees of $2,316.05 for 7.27
hours of work completed by its current counsel, Alston & Bird
LLP. Hanlon Decl. at ¶ 7, Exh. A. Although nearly all of the
hours claimed are reasonable in light of the work completed, some
of the time entries reflect excessive hours. For example, some
entries for associate Brook Clark clearly refer to other cases,
including "[r]eviewed dockets for all cases and updated case
status spreadsheets," "[c]onference with B. Hanlon and Nic Chai
regarding status of matters," "[d]rafted letter to YHCL regarding
responding to EGI's discovery requests," and "conference with S.
Hsia, A. Castro and S. Thomas regarding organization and
maintenance of all pending EGI cases." <u>See</u> Hanlon Decl., Exh. A
(January 4, 2006 and January 12, 2006 entries). Clearly, fees
charged for work attributable to cases against other defendants
are not recoverable. <u>See</u> <u>Arclightz & Films Pvt. Ltd. v. Video</u>
<u>Palace, Inc.</u>, 303 F. Supp. 2d 356, 364 (S.D.N.Y. 2003). Since
these time entries commingle various activities, it is impossible
for the Court to determine how much time was spent on a specific
task and credit some portion of those time entries. Accordingly,
I recommend that no fees be awarded for the .37 hours claimed.
As to paralegal Sarah Thomas's hours, I reduce by half the one

<hr/>

[5](...continued)
doc. 1 (E.D.N.Y.).

hour charged for "[u]pdat[ing] case binders with new court papers" as excessive.

I also find that the rates charged of $365.00 per hour for associate Brook Clark and $140.00 per hour for paralegal Sarah Thomas are within the range of rates charged for copyright infringement cases in New York City. See Video-Cinema Films, Inc. v. Cable News Network, Inc., Nos. 98 Civ. 7128, et al., 2004 WL 213032, at *3 (S.D.N.Y. Feb. 3, 2004) (noting that in 2000, median billing rate for New York City intellectual property law firms was $250 per hour for associates); Stevens v. Aeonian Press, Inc., No. 00 Civ. 6330, 2002 WL 31387224, at *5 (S.D.N.Y. Oct. 23, 2002) (approving rate for associate time charged at between $215 and $330 per hour, with an average of approximately $284 per hour and paralegal time billed at $135 per hour); Yurman Designs, Inc. v. PAJ, Inc., 125 F. Supp. 2d 54, 58 (S.D.N.Y. 2000) (approving average billing rate of $278 per hour for associates and $162 for paralegals), aff'd, 29 Fed. App'x 46 (2d Cir. 2002). Although attorney rates are generally evaluated in comparison to those charged in the district in which the court sits, courts in the Eastern District of New York often use rates awarded across the river, in the Southern District of New York, as a basis for comparison. See Nicholson v. Williams, No. 00 CV 2229, 2004 WL 4780498, at *10-*11 (E.D.N.Y. April 5, 2004); Tokyo Electron Arizona, Inc. v. Discreet Indus. Corp., 215 F.R.D. 60,

63 (E.D.N.Y. 2003); <u>New Leadership Comm. v. Davidson</u>, 23 F. Supp. 2d 301, 303-04 (E.D.N.Y. 1998).

Plaintiff's request for an additional $7,000 in attorney's fees "that are likely to be incurred through implementation of the Proposed Default Judgment and Permanent Injunction" is excessive. <u>See</u> Hanlon Decl. at ¶ 8. Plaintiff's counsel provides no other explanation for this request in terms of either the hours estimated to be necessary or the hourly rate to be charged for such work. Accordingly, in the absence of any information sufficient to provide an adequate basis for calculating such an award, I recommend awarding only $500 for plaintiff's request for attorney's fees to be incurred in the future. <u>See Cinelli v. MCS Claims Servs.</u>, 236 F.R.D. 118, 122 (E.D.N.Y. 2006) (awarding anticipated fees and costs to be spent administering settlement). However, plaintiff should be permitted to renew its request for such an award once the work is actually completed.

Finally, I find that plaintiff's request for $520 in costs consisting primarily of filing fees and service costs is reasonable.

Thus, I recommend that plaintiff be awarded $1,500 in fees for work performed by prior counsel, $2,111 in attorney's fees already incurred, $500 for attorney's fees "likely to be incurred" in the future and $520 in costs.

<u>CONCLUSION</u>

For the foregoing reasons, I recommend that plaintiff be awarded judgment against defendants in the amount of $2,100,000 in statutory damages under 17 U.S.C. § 504(c), plus $4,631 in attorney's fees and costs, for a total judgment of $2,104,631. I further recommend that a permanent injunction be granted and an order of impoundment and forfeiture be issued forthwith in the form submitted by plaintiff as Proposed Substitute Default Judgment and Permanent Injunction (ct. doc. 18).

A copy of this report and recommendation will be sent by overnight mail or electronically to the parties on this date. Objections to the Report and Recommendation must be filed with the Clerk of Court, with a copy to the Honorable Nicholas G. Garaufis and the undersigned, by November 9, 2006. Failure to file objections within the time specified waives the right to appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED.**


Dated:  Brooklyn, New York
        October 20, 2006


                        _____/s/_____
                        MARILYN D. GO
                        UNITED STATES MAGISTRATE JUDGE